# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HECTOR VALLADARES ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> PATRICIA HYDE, Field Office Director, ) <br> TODD LYONS, Acting Director U.S. ) <br> Immigrations and Customs Enforcement, ) <br> and KRISTI NOEM, U.S. Secretary ) <br> of Homeland Security, PAMELA BONDI, ) <br> U.S. Attorney General, DONALD J. TRUMP, ) <br> U.S. President ) <br> ) <br> Respondents. ) <br> ) | Case No. 1:25-cv-13271 <br><br> **AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

## **INTRODUCTION**

1. Petitioner Hector Valladares ("Petitioner") is a native and citizen of El Salvador. On information and belief, he was unlawfully detained by federal immigration agents on November 4, 2025, as part of a raid at an Allston car wash.[1]

2. To vindicate Petitioner's statutory, constitutional, and regulatory rights, this Court should grant the instant petition for a writ of habeas corpus.

3. Petitioner alleges violations of the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, and 8 U.S.C. § 1231.

---

[1] *See* "'This is kidnapping, plain and simple': ICE arrests 9 employees in raid at Allston car wash," *Boston.com*, November 4, 2025, https://www.boston.com/news/local-news/2025/11/04/this-is-kidnapping-plain-and-simple-ice-arrests-9-employees-in-raid-at-allston-car-wash/.

1

4. Petitioner asks this Court to find that his arrest and detention are illegal and order his immediate release, a stay of removal from jurisdiction of the United States or transfer outside of the District of Massachusetts, and a reasonable award of attorney's fees.

## JURISDICTION

5. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

6. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner is a noncitizen and whether Petitioner was ordered removed under 8 U.S.C. § 1225(b)(1).

7. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

8. Venue is proper because Petitioner is detained at Plymouth County Correctional Facility in Plymouth, Massachusetts, which is within the jurisdiction of this District.

9. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to his claims occurred in this District, and Petitioner resides in this District. There is no real property involved in this action. 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

10. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

11. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

12. Petitioner is a resident of Massachusetts. He is in the custody, and under the direct control, of Respondents and their agents.

13. Respondent Patricia Hyde is sued in her official capacity as the Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is a legal custodian of Petitioner and has authority to release him.

14. Respondent Michael Krol is sued in his official capacity as the HSI New England Special Agent in Charge. In this capacity, Respondent Krol is a legal custodian of Petitioner and has the authority to release him.

15. Respondent Todd Lyons is sued in his official capacity as Acting Director of the United States Immigration and Customs Enforcement. In this capacity, Respondent Lyons

oversees all detention of noncitizens held in ICE custody and is a legal custodian of petitioner with the authority to release him.

16. Respondent Kristi Noem is sued in her official capacity as Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Noem is a legal custodian of Petitioner.

17. Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner.

18. Respondent Donald J. Trump is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of State and Department of Homeland Security.

## STATEMENT OF FACTS

19. Petitioner is a 58-year-old citizen of El Salvador. He has resided in the United States for over 20 years.

20. On November 2, 2005, Petitioner entered the United States, and after being arrested by ICE, was placed in removal proceedings. Upon information and belief, he was released on his own recognizance.

4

21. Petitioner is illiterate in both English and Spanish and could not read the hearing notice that set his Individual Hearing for May 3, 2007. Therefore, he did not attend his final immigration hearing.

22. On May 3, 2007, Petitioner was ordered removed *in absentia* at the Boston Immigration Court.

23. Petitioner has continued to live in the United States without incident since 2007. He has no criminal record.

24. On November 4, 2025, Petitioner was detained by ICE pursuant to a warrantless arrest at his place of employment in Allston, Massachusetts, along with 8 of his coworkers. At no point during the arrest did the ICE agents show the Petitioner or his coworkers any documents or identify them by name.

25. After Petitioner was in ICE custody, Respondents discovered Petitioner's identity and that he had a removal order from 2007.

26. Petitioner fears returning to his home country of El Salvador and is in the process of preparing a motion to reopen his removal proceedings based on lack of notice.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fifth Amendment Right to Due Process

27. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth therein.

28. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

29. The Respondents' detention of the Petitioner is unjustified. The government has

not demonstrated that the Petitioner must be detained. See *Zadvydas*, 533 U.S. at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). The government must provide argument that the Petitioner cannot be safely released back to his community.

30. For a person in Petitioner's circumstances, detention without any individualized process also does not satisfy the procedural due requirements of *Mathews v. Eldridge*, 424 U.S. 319 (1976). First, he has a weighty liberty interest to be free from custody, and to live and work in the United States and to rejoin his family. *See Landon*, 459 U.S. at 34; *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects") (quoting *Zadvydas*, 533 U.S. at 695). Second, there is a risk of erroneous deprivation since there will be no individualized determination of whether he is a danger or flight risk. In *Hernandez-Lara*, the First Circuit concluded that misallocating the burden of proof in bond hearings amounted to rolling "loaded dice," and created a high risk of erroneous deprivation of liberty. *See* 10 F.4th at 32. That reasoning is amplified here, as Petitioner will receive no bond hearing. Third, the Government has no interest in the blanket detention of Petitioner without establishing dangerousness or a risk of flight, and the Government has 18 years to detain him for removal but chose not to. *See Hernandez-Lara*, 10 F.4th at 32-33; *id.* at 33 ("limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention").

31. For all the foregoing reasons, as applied to Petitioner, mandatory or discretionary detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

32. Should this Court hold a bond hearing or alternatively require that the immigration judge hold a bond hearing, due process requires that the Government prove that Petitioner is a danger by clear and convincing evidence and a flight risk by preponderance of the evidence. The Government must prove by clear and convincing evidence that no reasonable alternative to detention existed that would ensure the safety of the community, and by preponderance of the evidence that conditions of release cannot ensure Petitioner's return to court, and the court must inquire into his ability to pay. *See Brito v. Barr*, 415 F. Supp. 3d 258, 266-70 (D. Mass. 2019) (holding that at § 1226(a) bond hearings, the Government must bear the burden of proof and the IJ must consider alternatives to detention and a detainee's ability to pay), *aff'd in part*, *vacated in part*, *remanded by Brito v. Garland*, 22 F.4th 240, 252 (2021);[2] *Doe v. Tompkins*, No. 18-12266-PBS, 2019 U.S. Dist. LEXIS 22616, at *5 (D. Mass. Feb. 12, 2019) (holding that the immigration court should properly allocate the burden of proof and consider alternatives to detention to ensure the safety of the community and the petitioner's future appearances), *aff'd*, 11 F.4th 1 (1st Cir. 2021); *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) ("A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Ousman D. v. Decker*, Civil No. 20-9646 (JMV), 2020 U.S. Dist. LEXIS 171243, at *9–10 (D.N.J. Sept. 18, 2020) (bond hearing failed to comply with due process where immigration judge did not consider less restrictive alternatives to detention); *Hechavarria v. Whitaker*, 358 F.

---

[2] The First Circuit, in *Brito v. Garland*, did not affirm the District Court's holdings with respect to requiring IJs to consider alternatives to detention and a detainee's ability to pay. *See* 22 F.4th at 252-56. The First Circuit did not opine on the merits of these constitutional claims, but rather reversed because petitioners had not exhausted the alternatives-to-detention claim before the IJ, and the named plaintiffs did not have standing to address the ability to pay claim. *Id.* The First Circuit noted, "it is easy to see how conditions of release might shape an immigration judge's determination as to whether a noncitizen poses a flight risk or danger." *Id.* at 254.

Supp. 3d 227, 241-42 (W.D.N.Y. 2019) (holding that due process requires immigration judge to consider whether less restrictive alternatives to detention would address the Government's legitimate purposes); *Reid v. Donelan*, 390 F. Supp. 3d 201, 225 (D. Mass. 2019) (holding that Due Process requires the IJ to consider alternatives to detention and a detainee's ability to pay and explaining "this requirement guarantees that the decision to continue to detain a criminal alien is reasonably related to the Government's interest in protecting the public and assuring appearances at future proceedings"), *aff'd in part, vacated in part, remanded by Reid v. Donelan*, 17 F.4th 1, 12 (1st Cir. 2021);[3] *Davis v. Garland*, No. 22-CV-443-LJV, 2023 U.S. Dist. LEXIS 20490 (W.D.N.Y. Feb. 7, 2023) ("[T]he decisionmaker must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on conditions, that could reasonably address the government's interest in detaining [the petitioner]."); *O.F.C. v. Decker*, No. 22 Civ. 2255, 2022 U.S. Dist. LEXIS 177255, at *35 (S.D.N.Y Sept. 12, 2022) (finding that the IJ must consider alternative conditions of release in determining whether to grant bond).

---

[3] In 2021, the First Circuit affirmed in part, vacated in part, and remanded the District Court's 2019 *Reid* decision. *See Reid v. Donelan*, 17 F.4th 1, 12 (1st Cir. 2021). However, the First Circuit affirmed only as to the "judgment against the class rejecting the claim that persons detained for six months under section 1226(c) are automatically entitled to a hearing before an IJ that might lead to their release on bond pending the conclusion of removal proceedings." *See id.* at 12. The decision held that the district court impermissibly issued declaratory and injunctive relief, and that the district court erred in using the "class as a bootstrap to then adjudicate, on a class-wide basis, claims that hinge on the individual circumstances of each class member." *Id.* at 9-12. Notably, the First Circuit did not rule on the constitutionality of the procedural protections granted to class members by the District Court. Rather, the First Circuit rejected that the District Court could order such procedural protections outside of the context of an individual habeas petition. *See id.* at 11. Although the District Court's 2019 *Reid* decision is no longer binding, much of the rationale employed by the District Court in its holding setting forth the burden and standards of proof at § 1226(c) bond hearings protections follows the rationale utilized by the First Circuit in *Hernandez-Lara* to hold proof at § 1226(a) bond hearings. *See Hernandez-Lara*, 10 F.4th at 28-41; Reid, 819 F.3d at 224-25.

# COUNT TWO
## Violation of the Administrative Procedure Act

33. The allegations in the above paragraphs are realleged and incorporated herein.

34. The Administrative Procedure Act (APA) provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaugnessy*, 347 U.S. 260, 266, 268 (1954). The Accardi doctrine also obligates agencies to comply with procedures it outlines in its internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual).

35. A court reviewing agency action "must assess … whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine[e] the reasons for agency decisions- or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

36. The APA authorizes courts to "set aside" agency action that is "in excess of statutory jurisdiction, authority, limitations, or statutory right" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A), (C). It directs courts to "decide all relevant questions of law" and to "interpret constitutional and statutory provisions." *Id* at § 706. Courts perform this review *de novo* and therefore afford agency interpretation of the statute no deference when determining its meaning. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

37. Here, the governing statute orders the executive to promulgate regulations that

9

require noncitizens on supervised orders of release to do four things. 8 U.S.C § 1231(a)(3). Those requirements include appearing before an immigration officer periodically for identification, submitting, if necessary, to medical and psychiatric examination at the expense of the U.S. government, giving information under oath about the alien's nationality, circumstances, habits, associations, and other information the Attorney General considers appropriate, and obeying reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the noncitizen. 8 U.S.C § 1231(a)(3)(A), (B), (C), (D).

38. The regulations promulgated pursuant to 8 U.S.C § 1231(a)(3) go beyond the scope of statutory authority. Here, the governing regulations provide for the continued detention beyond the removal period. 8 C.F.R. § 241.4. Detaining a noncitizen, however, is an *ultra vires* action, not enumerated in 8 U.S.C § 1231(a)(3). When circumstances support a sensible inference that a term left out must have meant to be excluded, courts apply the canon of *expressio unius* statutory interpretation. *See NLRB v. SW Gen., Inc.* 580 U.S. 288, 301 (2017) (the inclusion of certain statutory provisions comes at the necessary exclusion of others). The statute considers the restraints the executive may place on a noncitizen *after releasing* that person from detention. *See* 8 U.S.C § 1231(a)(3). The relevant section of statute does not contemplate re-detention at all. *Id*. It is sensible to infer that in the context of restrictions affecting a person released from detention, including certain restrictions that fall short of detention excludes detention as an authorization of statute.

39. The government arresting Petitioner without cause over 18 years after his in absentia removal order constitutes an abuse of discretion, and is contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C).

40. Furthermore, upon information and belief, Petitioner was detained pursuant to

Respondent Donald J. Trump's Executive Order "Protecting the American People Against Invasion" (Jan. 20, 2025), that articulates a policy of "'total and efficient enforcement' . . . against all inadmissible and removable aliens." Through ICE Policy 11005.4, ICE purports to implement that Executive Order, and supersedes previous ICE directives 11005.3 and 10076.1, which directed ICE officials to adopt a "victim-centered approach" when engaged in civil immigration enforcement. These policies are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A)

41. Because the regulations governing detention after the government releases a noncitizen on supervised release come in excess of statutory jurisdiction, authority, or limitations, this court should set those regulations aside. Without those regulations, the Respondents have no authority to detain Petitioner.

## COUNT THREE
**Violation of 8 U.S.C. § 1231 and Implementing Regulations**

42. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

43. A noncitizen's continued detention beyond the removal period is distinguishable from re-detention following their release from ICE custody.

44. Because the government released Petitioner on his own recognizance in 2005, by arresting him in 2025, ICE did not continue his detention but rather initiated a new detention (*i.e.*, re-detained the Petitioner).

45. ICE was not authorized to re-detain Petitioner pursuant to 8 U.S.C. § 1231(a)(6).

46. Section 1231(a)(6) provides that:

An alien ordered removed who is inadmissible under *section 1182* of this title, removable under *section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)* of this title or who has been determined by the Attorney General to be a risk to the community or

unlikely to comply with the order of removal, *may* be detained *beyond* the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3)].

8 U.S.C. § 1231(a)(6) (emphasis added).

47. Section 241.4 of Title 8 of the Code of Federal Regulations provides that:

(a) Scope. The authority *to continue an alien in custody* or grant release or parole under sections 241(a)(6) and 212(d)(5)(A) of the Act shall be exercised by the Commissioner or Deputy Commissioner, as follows: Except as otherwise directed by the Commissioner or his or her designee, the Executive Associate Commissioner for Field Operations (Executive Associate Commissioner), the Deputy Executive Associate Commissioner for Detention and Removal, the Director of the Detention and Removal Field Office or the district director may *continue an alien in custody beyond the removal period* described in section 241(a)(1) of the Act pursuant to the procedures described in this section. Except as provided for in paragraph (b)(2) of this section, the provisions of this section apply to the custody determinations for the following group of aliens:
(1) An alien ordered removed who is *inadmissible under section 212* of the Act, including an excludable alien convicted of one or more aggravated felony offenses and subject to the provisions of section 501(b) of the Immigration Act of 1990, Public Law 101–649, 104 Stat. 4978, 5048 (codified at 8 U.S.C. 1226(e)(1) through (e)(3)(1994));
(2) An alien ordered removed who is removable under *section 237(a)(1)(C)* of the Act;
(3) An alien ordered removed who is removable under *sections 237(a)(2)* or *237(a)(4)* of the Act, including deportable criminal aliens whose cases are governed by former section 242 of the Act prior to amendment by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Public Law 104–208, 110 Stat. 3009–546; and
(4) An alien ordered removed who the decision-maker determines is *unlikely to comply with the removal order or is a risk to the community*.

8 C.F.R. 241.4 (emphasis added).

48. Section 1231(a)(6) and its concomitant regulation, 8 C.F.R. § 241.4, only authorize the *continuation* of the detention of noncitizen beyond the removal period where the noncitizen had been in custody at the time of the entry of his removal order or was detained during the removal period pursuant to 8 U.S.C. § 1231(a)(2) and 8 C.F.R. § 241.3.

49. Section 1231(a)(6) and 8 C.F.R. § 241.4 do not authorize the re-detention of a

noncitizen, like Petitioner, who was previously released from custody unless the government shows by clear and convincing evidence that the noncitizen has become a danger to the community or flight risk. *See Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2411010, at *8 (E.D. Cal. Aug. 20, 2025) (holding that the government "[could] not *re-detain* petitioner unless [it] proves by clear and convincing evidence at a bond hearing before a neutral arbiter that petitioner is a flight risk or danger to the community" where the noncitizen, despite having a reinstated removal order, was previously released from custody (emphasis added)); *see also Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's *re-detention* without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest." (emphasis added)).

50. Because ICE has not demonstrated that a change in circumstances renders Petitioner a danger to the community or a flight risk, it lacked authority to re-detain him. Accordingly, this Court should order his immediate release from custody or, in the alternative, a bond hearing before this Court. *Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *11 (S.D.N.Y. June 12, 2018) (finding a risk of erroneous deprivation in the context of re-detention absent a change in circumstances, procedure, or evidentiary findings); *see also Kelly v. Almodovar*, No. 25 CIV. 6448 (AT), 2025 WL 2381591, at *4 (S.D.N.Y. Aug. 15, 2025) (ordering immediate release of the petitioner after holding that, even if ICE has discretionary authority to detain a noncitizen under 8 U.S.C. § 1226(a), it was "required to adhere to basic principles of due process," and failed to do so by detaining him "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond," which constituted a due process violation").

## COUNT FOUR
### Release on Bail Pending Adjudication

51. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

52. Federal courts sitting in habeas possess the "inherent power to release the petitioner pending determination of the merits." *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (quoting *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam)); see also *Da Graca v. Souza*, 991 F.3d 60 (1st Cir. 2021). Federal courts "have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in the criminal habeas case." *Id*. (quoting *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)). "A court considering bail for a habeas petitioner must inquire into whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id*. (quoting Mapp, 241 F.3d at 230) (cleaned up).

53. This petition raises constitutional and statutory claims challenging the Petitioner's detention. Upon reason and belief, the Petitioner fears his transfer to a detention facility outside of Massachusetts, where his remote location would prevent him from adequately litigating his removal and bond proceeding by limiting his access to counsel and evidence located within the District of Massachusetts.

### **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3) Declare that Petitioner's detention and arrest violates the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, and 8 U.S.C. § 1231;

(4) Issue a Writ of Habeas Corpus ordering Respondents to immediately release petitioner, and, in the interim preventing him transfer outside of the District.

(5) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(6) Grant any further relief this Court deems just and proper.

Respectfully submitted,

HECTOR VALLADARES

By and through his counsel,

Dated: November 24, 2025

/s/ *Todd C. Pomerleau*
/s/ *Nicole Dill*
Todd C. Pomerleau (MA BBO#664974)
Nicole Dill (MA BBO#709113)
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077
Fax: (617) 367-0071
rubinpom@rubinpom.com

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Hector Valladares, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 24th day of November, 2025.

/s/ *Nicole Dill*
Nicole Dill