UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HECTOR VALLADARES, <br><br>  Petitioner, <br><br> v. <br><br> PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security, PAMELA BONDI, U.S. Attorney General, DONALD J. TRUMP, U.S. President <br><br>  Respondents. | Case No. 1:25-cv-13271-IT |

## PETITIONER'S RESPONSE TO ORDER TO SHOW CAUSE

Petitioner Hector Valladares ("Petitioner"), by and through counsel, respectfully submits this response to the Court's January 20, 2026 Order to Show Cause "as to why the court's Order Concerning Service of Petition and Stay of Transfer or Removal [3] should not be vacated and the Amended Petition [15] dismissed for lack of jurisdiction in light of Respondents' Second Notice of Intent to Transfer to Effectuate Removal Order [30]." [Doc. 20]. Petitioner maintains that this Court still has jurisdiction over the petition, and request that this Court grant it and order his immediate release.

As argued in Petitioner's Response to Order to Show Cause [Doc. 21] filed December 22, 2025, in response to the Court's December 19, 2025 order to show cause [Doc. 20], it is critical for the Court to shift its focus to the unlawful nature of Petitioner's current <u>detention</u>, not Respondents' authority to remove him from the country. Despite the denial of the Petitioner's motion to reopen his removal proceedings, this Court retains clear habeas jurisdiction under 28

1

U.S.C. § 2241 because the Petitioner is challenging the legality of his restraint, not merely the mechanics of his removal.

Respondents contend that Petitioner is detained pursuant to 8 U.S.C. § 1231(a), asserting that he is within a "removal period" following a final order. However, Petitioner's current incarceration constitutes an unauthorized "re-detention" rather than a continuation of a removal period. ICE was not authorized to re-detain Petitioner pursuant to 8 U.S.C. § 1231(a)(6). Section 1231(a)(6) provides that:

> An alien ordered removed who is inadmissible under *section 1182* of this title, removable under *section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)* of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may* be detained *beyond* the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3)].

8 U.S.C. § 1231(a)(6) (emphasis added).

Section 241.4 of Title 8 of the Code of Federal Regulations provides that:

> (a) Scope. The authority *to continue an alien in custody* or grant release or parole under sections 241(a)(6) and 212(d)(5)(A) of the Act shall be exercised by the Commissioner or Deputy Commissioner, as follows: Except as otherwise directed by the Commissioner or his or her designee, the Executive Associate Commissioner for Field Operations (Executive Associate Commissioner), the Deputy Executive Associate Commissioner for Detention and Removal, the Director of the Detention and Removal Field Office or the district director may *continue an alien in custody beyond the removal period* described in section 241(a)(1) of the Act pursuant to the procedures described in this section. Except as provided for in paragraph (b)(2) of this section, the provisions of this section apply to the custody determinations for the following group of aliens:
> (1) An alien ordered removed who is *inadmissible under section 212* of the Act, including an excludable alien convicted of one or more aggravated felony offenses and subject to the provisions of section 501(b) of the Immigration Act of 1990, Public Law 101–649, 104 Stat. 4978, 5048 (codified at 8 U.S.C. 1226(e)(1) through (e)(3)(1994));
> (2) An alien ordered removed who is removable under *section 237(a)(1)(C)* of the Act;
> (3) An alien ordered removed who is removable under *sections 237(a)(2)* or *237(a)(4)* of the Act, including deportable criminal aliens whose cases are governed by former section 242 of the Act prior to amendment by the Illegal Immigration

>Reform and Immigrant Responsibility Act of 1996, Div. C of Public Law 104–208, 110 Stat. 3009–546; and
>(4) An alien ordered removed who the decision-maker determines is *unlikely to comply with the removal order or is a risk to the community*.

8 C.F.R. 241.4 (emphasis added).

Section 1231(a)(6) and its concomitant regulation, 8 C.F.R. § 241.4, only authorize the *continuation* of the detention of noncitizen beyond the removal period where the noncitizen had been in custody at the time of the entry of his removal order or was detained during the removal period pursuant to 8 U.S.C. § 1231(a)(2) and 8 C.F.R. § 241.3.

Section 1231(a)(6) and 8 C.F.R. § 241.4 do not authorize the re-detention of a noncitizen, like Petitioner, who was previously released from custody unless the government shows by clear and convincing evidence that the noncitizen has become a danger to the community or flight risk. *See Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2411010, at *8 (E.D. Cal. Aug. 20, 2025) (holding that the government "[could] not *re-detain* petitioner unless [it] proves by clear and convincing evidence at a bond hearing before a neutral arbiter that petitioner is a flight risk or danger to the community" where the noncitizen, despite having a reinstated removal order, was previously released from custody (emphasis added)); *see also Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's *re-detention* without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest." (emphasis added)).

Because ICE has not demonstrated that a change in circumstances renders Petitioner a danger to the community or a flight risk, it lacked authority to re-detain him. Accordingly, this Court can and should order his immediate release from custody or. *Cf. Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *11 (S.D.N.Y. June 12, 2018) (finding a risk of erroneous

deprivation in the context of re-detention of an arriving alien[1] absent a change in circumstances, procedure, or evidentiary findings); *see also Kelly v. Almodovar*, No. 25 CIV. 6448 (AT), 2025 WL 2381591, at *4 (S.D.N.Y. Aug. 15, 2025) (ordering immediate release of non-citizen in removal proceedings after holding that, even if ICE has discretionary authority to detain a noncitizen under 8 U.S.C. § 1231(a)(6), it was "required to adhere to basic principles of due process," and failed to do so by detaining him "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond," which constituted a due process violation").

Because the government released Petitioner on his own recognizance in 2005, his arrest in 2025 initiated a new period of custody. Under 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4, the government is only authorized to continue detention beyond the removal period for specific classes of noncitizens, typically those currently in custody. The statute does not grant the executive a complete and unrestrained authority to re-arrest and detain individuals like Petitioner—who has lived peacefully in the community for almost 20 years—without a showing of changed circumstances or a specific determination of dangerousness. As held in *Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025), and *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2411010, at *8 (E.D. Cal. Aug. 20, 2025), re-detaining a petitioner after a long-term release without any change in circumstances creates a high risk of erroneous deprivation of liberty and violates the Fifth Amendment.

Even if the government claimed discretionary authority to detain Petitioner, after numerous filings with this Court and over two and a half months of detention, they have still failed to provide any justification for their warrantless arrest of Petitioner on November 4, 2025. Petitioner has a

---

[1] Arriving aliens are subject to mandatory detention pursuant to INA § 235(b)(2).

weighty liberty interest in remaining free from custody and rejoining his family in Massachusetts, even if just to get his affairs in order before departing to El Salvador. The government has not demonstrated, nor even argued, that Petitioner poses a danger to the community or a flight risk that necessitates detention after nearly two decades of lawful conduct. Under the *Accardi* doctrine and the Administrative Procedure Act, the government's sudden "total enforcement" policy is arbitrary, capricious, and in excess of statutory authority. By detaining Petitioner with no process at all, much less a bond hearing where the government bears the burden of proof, Respondents have bypassed crucial constitutional protections given to all individuals in the United States.

It cannot be overstated that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Respondents had several other, less restrictive options to carry out Petitioner's removal beyond detaining him, especially considering that Petitioner has no criminal history and has peacefully lived and worked in the United States for the last twenty years. He suffers from numerous medical issues that have been exacerbated by Respondents' unlawful detention of him. Respondents have not given any justification as to why Petitioner could not have been released subject to non-detention alternatives, such as periodic ICE check-ins and/or GPS monitoring.

In sum, through its December 23, 2025 Order this Court determined that Petitioner was entitled to a bond hearing, which should be understood as the requirement of dangerousness and/or flight risk determinations as a precondition to any continued detention, despite his prior removal

order.[2] Based on its knowledge regarding the immigration courts' application of *Yahure-Hurtado* to deprive noncitizens of their liberty without these requisite determinations, the Court preemptively stated that it would hold such bond hearing in the event that a jurisdictional barrier was raised by the immigration court to bypass making dangerousness and/or flight risk findings. Although not under *Yahure-Hurtado*, this is exactly what happened here. By its reliance 8 U.S.C. § 1252(g), the immigration court sanctioned Petitioner's continued detention without any dangerousness or flight risk basis. This clearly misaligns with this Court's December 23, 2025 Order.

Accordingly, Petitioner respectfully requests that the Court deny the Respondents' request to vacate the stay and maintain the Order of November 5, 2025 and grant the underlying Petition and order his immediate release.

Respectfully submitted,

HECTOR VALLADARES

By and through his counsel,

Dated: January 22, 2026

/s/ *Todd C. Pomerleau*
/s/ *Nicole Dill*
Todd C. Pomerleau (MA BBO#664974)
Nicole Dill (MA BBO#709113)
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077
Fax: (617) 367-0071
rubinpom@rubinpom.com

---

[2] Based on prior filings by both Petitioner and Respondents, this Court was well aware of Petitioner's prior removal order and thus also presumptively aware of the provisions that Respondents' and the immigration judge relied on to deny him of dangerousness and flight risk findings (*i.e.*, a bond hearing).

## **CERTIFICATE OF SERVICE**

I, Todd C. Pomerleau, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.

Dated this 22nd day of January, 2026

/s/ *Todd C. Pomerleau*
*Todd C. Pomerleau*
