UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HECTOR VALLADARES, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| PATRICIA HYDE, Field Office Director; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, U.S. Secretary of Homeland Security; PAMELA BONDI, U.S. Attorney General; and DONALD J. TRUMP, U.S. President, | *  Civil Action No. 1:25-cv-13271-IT |
| Respondents. | * |

MEMORANDUM & ORDER

February 4, 2026

Before the court is Petitioner Hector Valladares' Amended Petition for Writ of Habeas Corpus [Doc. No. 15] and Respondents' Second Notice of Intent to Transfer to Effectuate Removal Order [Doc. No. 30] and Third Status Report [Doc. No. 33]. Respondents request that the court vacate its Order Concerning Service of Petition and Stay of Transfer or Removal [Doc. No. 3] and dismiss Petitioner's Amended Petition [Doc. No. 15].

For the reasons set forth below, the Amended Petition [Doc. No. 15] is DISMISSED without prejudice, and the Order [Doc. No. 3] is VACATED.

**I.     Background**

The underlying facts of Petitioner's Amended Petition [Doc. No. 15] are set forth in the court's December 23, 2025 Memorandum and Order [Doc. No. 22] and are incorporated by reference here. In that decision, the court found that where Petitioner's motion to reopen his 2007 removal order was pending, it was not an "administratively final" order within the meaning

of 8 U.S.C. § 1231(a)(1)(B)(i). Id. at 6. Accordingly, the court granted Petitioner's Amended Petition [Doc. No. 15] insofar as Petitioner requested a custody redetermination hearing (a "bond hearing"), pursuant to 8 U.S.C. § 1226, before an Immigration Judge ("IJ"). Id. at 7–8.

The IJ held a bond hearing on December 31, 2025. See Status Rep. 1–2 [Doc. No. 23]. At the hearing, counsel for ICE

> conceded that [this court's] Order gave the [IJ] jurisdiction to conduct a bond hearing, conceded that it could not show [Petitioner] is a danger to the community, argued that [Petitioner presents a flight risk, given that [he] evaded U.S. immigration laws because he remained in the country for nearly [twenty] years under a final order of removal.

Id. at 2. Rather than render a decision on the arguments raised by the parties, however, the IJ held that, where Petitioner's December 22, 2025 motion to reopen his 2007 removal order remained pending before the Immigration Court, Petitioner was ineligible for bond. Id.; see Status Rep., Ex. 1, at 1 [Doc. No. 23-1].

On January 2, 2026, Petitioner filed a Motion for Order to Show Cause and for Petitioner's Immediate Release [Doc. No. 24], in which he sought an order from this court directing Respondents "to show cause as to why they should not be found in contempt for their disobedience of its December 23, 2025 order" and requesting Petitioner's immediate release. Id. at 1, 3. Respondents opposed the motion and filed a Motion for Reconsideration and Request for Clarification of Court Order [Doc. No. 27] as to the grant of Petitioner's Amended Petition [Doc. No. 15].

Before the court decided either motion, Respondents filed a Second Status Report [Doc. No. 28], in which they informed the court that Petitioner's motion to reopen had been denied by an IJ on January 12, 2026, and the automatic stay of removal that accompanied the filing of that motion was thereby lifted. Id. at 2. Respondents again requested that the court vacate its Order

2

Concerning Service of Petition and Stay of Transfer or Removal [Doc. No. 3], deny Petitioner's outstanding Motion [Doc. No. 24], and grant Respondents' outstanding Motion [Doc. No. 27]. See id.

In light of the new information provided by Respondents in their Opposition [Doc. No. 26] and Second Status Report [Doc. No. 28], the court denied as moot both Petitioner's Motion [Doc. No. 24] and Respondents' Motion [Doc. No. 27] on January 16. Elec. Order [Doc. No. 29]. That evening, Respondents filed their Second Notice of Intent to Transfer to Effectuate Removal Order [Doc. No. 30], in which they again expressed their intent to deport Petitioner to El Salvador pursuant to his removal order and asked the court to vacate its Order [Doc. No. 3]. See Second Notice of Intent to Transfer to Effectuate Removal Order 2 [Doc. No. 30]. The court directed Petitioner to show cause, no later than January 22, 2026, as to why the Order [Doc. No. 3] should not be vacated and the Amended Petition [Doc. No. 15] dismissed for lack of jurisdiction, as argued by Respondents. See Elec. Order [Doc. No. 31].

In response, Petitioner contends, inter alia, that: (1) the court still has jurisdiction over the Amended Petition [Doc. No. 15]; (2) Petitioner's current detention, regardless of Respondents' authority to remove him from the United States, is unlawful; and (3) Respondents' reliance on 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4 as legal authority for Petitioner's detention is insufficient where Petitioner was "re-detained" nearly two decades after the *in absentia* removal order was entered, rather than subject to a continuation of detention as contemplated in the statutory and regulatory provisions. Pet.'s Resp. 1–3 [Doc. No. 32].

## II.     Discussion

Under 8 U.S.C. § 1231(a), a noncitizen subject to a final order of removal shall be removed from the United States "within a period of 90 days," a period the statute refers to as the

"removal period." The noncitizen is subject to mandatory detention during the ninety-day removal period. See 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). If the noncitizen is not removed within the removal period, he or she "shall be subject to supervision under regulations prescribed by the Attorney General" pending removal. Id. § 1231(a)(3). Certain noncitizens, however, may be detained "beyond the removal period." See id. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]").

The parties do not dispute that Petitioner is subject to a final order of removal, for which a motion to reopen has been denied, and that he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Instead, they disagree as to whether his detention is authorized under 8 U.S.C. § 1231(a)(6) where Petitioner was initially released from Immigration and Naturalization Service ("INS") detention in November 2005 but, despite his 2007 *in absentia* removal order, was never returned to custody until November 2025.

Respondents' argument—that Petitioner's detention is a permissible continuation of detention under 8 U.S.C. § 1231(a)(6)—is not dispositive where there was an approximately twenty-one-year break in Petitioner's custody. See, e.g., Tadros v. Noem, No. 25-cv-4108 (EP), 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (despite petitioner's immediate release, removal period began when removal order was affirmed, rather than when petitioner was detained sixteen years later); Farez-Espinoza v. Chertoff, 600 F. Supp. 2d 488, 500 (S.D.N.Y. 2009) (where government was aware of noncitizen's address but did not pursue removal for more than fifteen months after removal order entered, "the removal period, as well as any presumptively

4

reasonable six-month period of removal to which the government may have been entitled" had expired). The regulation on which Respondents have relied, 8 C.F.R. § 241.4, is likewise inconclusive where the text of that regulation speaks only to continued detention, rather than intermittent or interrupted detention periods:

> The authority to <u>continue an alien in custody</u> . . . shall be exercised by the Commissioner or Deputy Commissioner as follows: Except as otherwise directed . . . the Director of the Detention and Removal Field Office or the district director may <u>continue an alien in custody</u> beyond the removal period described in section 241(a)(1) of the [Immigration and Nationality Act] pursuant to the procedures described in this section.

8 C.F.R. § 241.4(a) (emphases added); <u>see id.</u> (code section entitled "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period" (emphasis added)). Against this backdrop, the court turns to Petitioner's assertion that his detention violates his right to due process under the Fifth Amendment to the Constitution. <u>See</u> Am. Pet. ¶¶ 27–32 [Doc. No. 15]; Pet.'s Resp. 3–4 [Doc. No. 32].

Whether 8 U.S.C. § 1231(a)(6) permits the Secretary of Homeland Security "to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal" was the central question before the Supreme Court in <u>Zadvydas v. Davis</u>, 533 U.S. 678, 682 (2001) (emphasis omitted). There, the Court concluded that detention of a noncitizen beyond the removal period is limited to "a period reasonably necessary to bring about" the noncitizen's removal, with six months of detention considered presumptively reasonable. <u>Id.</u> at 689, 701. Where the Court measured "reasonableness" in this context "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal," <u>id.</u> at 699, detention of a noncitizen whose removal is not reasonably foreseeable is "unreasonable and no longer authorized by statute." <u>Primero v. Mattivelo</u>, 25-cv-11442, 2025 WL 1899115, at *4 (D. Mass. July 9, 2025) (citing <u>Zadvydas</u>, 533 U.S. at 699–

700). Accordingly, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

As with the ninety-day removal period, discussed supra, it is unclear when the presumptively reasonable six-month detention period recognized in Zadvydas runs or tolls when a noncitizen has not been continuously detained. See, e.g., Lu v. Genalo, 25-civ-7161 (AT), 2025 WL 3512244, at *1–3 (S.D.N.Y. Dec. 8, 2025) (noting that the Court in Zadvydas "did not address the situation . . . where a noncitizen was detained for eight months, released for a period of 25 years, and then, for a second time, subject to post-removal detention based on purportedly changed circumstances"); Zavvar v. Scott, 25-2104-TDC, 2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025)  (where government had "over 17 years" to arrange for petitioner's removal, "there is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period"); Grigorian v. Bondi, 25-cv-22914-RAR, 2025 WL 1895479, at *2, 8 (S.D. Fla. July 8, 2025) (no violation of Zadvydas where petitioner was ordered removed in 2011, detained on June 23, 2025, and, as of the date of the court's order, had "been in custody for fifteen days").

But "even if Zadvydas's presumptively reasonable six-month period of detention accrues only when a noncitizen is in detention, and even if it remains at six months even though, as here, Respondents had a substantial pre-detention opportunity to arrange [the noncitizen's] removal, . . . the presumption is rebuttable." Zavvar, 2025 WL 2592543, at *5 (quotation omitted); see Lu, 2025 WL 3512244, at *4 (with respect to Zadvydas's six-month presumptively reasonable detention period, "any presumption is rebuttable and does not create a bright-line rule" (quotation omitted)); Munoz-Saucedo v. Pittman, 789 F. Supp. 3d 387, 396 (D.N.J. 2025)

6

("Although some courts have read Zadvydas as creating a bright-line rule—one that effectively allows the government to detain a person for at least six months without judicial review, even if there was no possibility of removal—a close reading of Zadvydas does not support that interpretation."). The court thus considers whether Petitioner has shown "that there 'is no significant likelihood of removal in the reasonably foreseeable future.'" Zavvar, 2025 WL 2592543, at *6 (quoting Zadvydas, 533 U.S. at 701).

First, Petitioner is, without dispute, subject to a final order of removal issued on May 4, 2007. See Opp'n, Ex. 1, Decl. of Keith Chan ¶¶ 9–11 [Doc. No. 18-1]; Am. Pet. ¶¶ 21–22 [Doc. No. 15]. Petitioner has also not identified any pending bar to his removal. See, e.g., Villanueva v. Tate, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025) (removal not likely in reasonably foreseeable future where petitioner was granted a withholding of his removal to Mexico and could contest any future efforts to remove him to a third country identified in the future); Zavvar, 2025 WL 2592543, at *7 (removal not likely in reasonably foreseeable future where petitioner was granted withholding of his removal to Iran and the two "third countries" to which ICE sought to deport him were highly unlikely to accept petitioner where he lacked any ties to either country); Primero, 2025 WL 1899115, at *2, 5 (removal in reasonably foreseeable future unlikely where petitioner's grant of deferred action pursuant to his I-360 Special Immigrant Juvenile Petition remained valid for approximately two more months and had not been otherwise terminated).

Second, the record indicates that Respondents intend to swiftly execute Petitioner's removal order. Respondents have repeatedly requested that this court lift its Order [Doc. No. 3] so that Petitioner may be "staged" for removal and deported to El Salvador within a short timeframe. See Third Status Rep. 3 [Doc. No. 33] (reiterating that "Respondents continue to ask this Court to vacate its Order . . . [to] allow ICE to effectuate Petitioner's removal"); Second

7

Notice of Intent to Transfer to Effectuate Removal Order 2 [Doc. No. 30] (informing the court that "ERO intends to transfer Petitioner outside of the District and schedule removal of Petitioner within a few days, provided that the Court lifts the prohibition on transfer and removal"); Second Status Rep. 2 [Doc. No. 28] (stating that "ICE seeks to remove Petitioner" and requesting that the court vacate its Order [Doc. No. 3]); Notice of Intent to Transfer to Effectuate Removal Order 1 [Doc. No. 19] (seeking to transfer Petitioner on December 24, 2025, "to stage Petitioner prior to effectuating Petitioner's final order of removal to occur on or after January 4, 2026"). Petitioner's motion to reopen his 2007 final order of removal has also been denied by an IJ, see Second Status Rep., Ex. 1 [Doc. No. 28-1], and Petitioner has not advised the court that he has appealed this denial to the Board of Immigration Appeals. See generally Pet.'s Resp. [Doc. No. 32] (making no mention of any pending appeal of the IJ's decision as to Petitioner's motion to reopen).

The court recognizes that Petitioner has resided here for nineteen years since he was ordered removed *in absentia*. See Zavvar, 2025 WL 2592543, at *7 (considering that "for a period of over 17 years, until [the petitioner] was detained in June 2025, Respondents either made no efforts to remove him, or any such efforts were unsuccessful"). But this lengthy period does not negate that, for the reasons described supra, there is a "significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

### III. Conclusion

Accordingly, Petitioner's Amended Petition [Doc. No. 15] is DISMISSED without prejudice, and the Order Concerning Service of Petition and Stay of Transfer or Removal [Doc. No. 3] is VACATED. Respondents shall submit a status report on this matter no later than February 11, 2026.

IT IS SO ORDERED.

February 4, 2026                                             /s/ Indira Talwani
                                                                           United States District Judge